CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
June 2, 2016
JULIA C. DUDLEY, CLERK
BY: A. Melvin
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| FIDELITY NATIONAL TITLE INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) Civil Action No. 7:15-cv-00018<br>) |
| FRANKLIN R. RADFORD and MARY E. RADFORD, | )<br>)<br>) |
| Defendants/Third-Party Plaintiffs, | ) By: Elizabeth K. Dillon<br>) United States District Judge |
| v. | )<br>) |
| COMPTON M. BIDDLE and OSTERHOUDT, PRILLAMAN, NATT, HELSCHER, YOST, MAXWELL & FERGUSON, P.L.C., | )<br>)<br>)<br>) |
| Third-Party Defendants. | ) |

**MEMORANDUM OPINION**

Pending before the court is the motion to dismiss of third-party defendants Compton M. Biddle and the law firm where he is a partner, Osterhoudt, Prillaman, Natt, Helscher, Yost, Maxwell & Ferguson, P.L.C. (the Firm). (Dkt. No. 45.) These defendants seek dismissal of the sole remaining claim in the amended third-party complaint, a breach of contract claim.[1] (Am. Third-Party Compl. (Compl.), Dkt. No. 44.) The viability of the claim turns on a single issue: whether there was a written contract between Franklin R. and Mary E. Radford—the third-party plaintiffs—and Biddle and the Law Firm. If there was a written contract, then the claim is timely

---

[1] In their written submissions, the parties also addressed whether the Radfords improperly included an implied indemnity claim in Count II of their amended third-party complaint. At the March 30, 2016 hearing before this court, the parties explained that Judge Urbanski, the judge previously assigned to this case, had issued an oral ruling on that claim, confirming that the implied indemnity claim had been dismissed by his prior order. Accordingly, the breach of contract claim is the only remaining claim in the amended third-party complaint.

brought within Virginia's five-year statute of limitations for breaches of written contracts. If there was no written contract, but only an oral contract for services, then a three-year limitations period applies and the breach of contract claim is time-barred. The motion has been fully briefed and was argued before this court at a March 31, 2016 hearing. As explained below, the court will grant the motion to dismiss because there was no written contract between the parties and the claim is barred by the applicable three-year statute of limitations.

## I.  BACKGROUND

Before this case was reassigned, United States District Judge Michael F. Urbanski had issued a memorandum opinion addressing a prior motion to dismiss by the third-party defendants. (Dkt. No. 41.) The background of the case is well presented in that memorandum opinion, as well as in an earlier opinion issued by Judge Urbanski addressing the defendants' motion for a more definite statement (Dkt. No. 14 at 1–2), so the court will not restate it. Succinctly summarized, the Radfords sold property in July 2010 to the Tinaglias, and Fidelity issued a title insurance policy in connection with that real estate transaction. The deed purported to convey an easement to the Tinaglias, but Fidelity claims that the easement was not properly conveyed. Fidelity thus paid a sum to the Tinaglias, pursuant to its title insurance policy, and then sued the Radfords in this action as the Tinaglias' subrogee.

The Radfords filed a third-party complaint against Biddle and the Firm, who performed legal work related to the July 2010 sale. In their breach of contract claim, the Radfords contend that Biddle and the Firm "breached the applicable standard of professional care" in the performance of legal services. (Compl. ¶ 35.) The Radfords claim that those breaches have caused them to incur litigation expenses, such as counsel fees and court costs, and also caused the loss of whatever amount they may owe to Fidelity. (Compl. ¶¶ 37–38.)

2

In his earlier dismissal opinion, Judge Urbanski dismissed all the claims asserted in the third-party complaint, except for the breach of contract claim. As to that claim, he granted the Radfords leave to amend so that they could allege additional facts to support their assertion that there was a written contract between them and Biddle/the Firm. (Mem. Op., Dkt. No. 41.) In their amended complaint, the Radfords point to a series of July 2010 e-mails between Frank Radford and Biddle as evidence of this written contract. (Compl. ¶ 21 & Exs. 3A–3C.)

Specifically, the Radfords allege that Biddle made a written contract proposal to them via e-mail, dated July 20, 2010, and time-stamped at 4:43 p.m., in which Biddle offered to handle the issue that had arisen with Fidelity regarding the easement reservation. (Compl. ¶ 21.)

In its entirety, the 4:43 p.m. e-mail from Biddle to Frank Radford stated:

Frank,

> The reason the title examiner did not include the easement reservation was because it was recorded when Radford & Company no longer owned the property.
>
> We might be able to argue the title company should insure it anyway. If that does not work, then in order to convey that easement, we would likely need to get the HOA to sign off on the Deed containing the right of way.
>
> Time incurred in accomplishing this is outside of the scope of the standard closing fee and would be charged at my hourly rate of $200/hr. Let me know if you wish to retain me for this work.

(Compl. Ex. 3A at 1, Dkt. No. 44-4.)

According to the Radfords, this e-mail "constituted an offer, which was accepted by the Radfords by their conduct and by the performance of the parties, as demonstrated in the ensuing communications and by Biddle's actions on behalf of the Radfords." (Compl. ¶ 21.) The complaint also points to various other e-mails that show that Biddle actually went on to perform work for the Radfords on this issue. The Radfords rely on these additional communications, as

3

well as their allegations that they were billed for and paid for "legal services concerning the conveyance of the Property, including the easement set forth in the . . . deed to the Tinaglias" (Compl. ¶ 29), in order to show that there was a written contract between the parties.[2]

Biddle and the Firm acknowledge that there was an offer by Biddle to do additional work (the July 20, 2010, 4:43 p.m. e-mail), but contend that the offer was rejected by Frank Radford in his response—a July 20, 2010, 10:26 p.m. e-mail with the same subject heading. Radford responded as follows:

> Compton,
>
> Your info is incorrect, Radford and company had to own these parcels according to Webster Day and confirmed by Roanoke County. The parcels contained in the reserved easement were left out of the recorded maps made for the auction and not sold at auction. I do not wish to incur any further expence [sic] and will void the closing and not sell the property if the buyer wants out of the contract.
>
> Frank

(*Id.* at 3.) The Radfords counter that this response was not a rejection, but is "better read to be instructions to his lawyer regarding the goals of the representation proposed in Biddle's email." (Opp'n Mem. 5, Dkt. No. 47.)

Other subsequent e-mails show that Radford and Biddle continued to discuss who owned the property at the time of the prior easement and possible strategies for dealing with the problem with the easement, and that Biddle communicated with individuals from the title company and with the Tinaglias concerning the easement and the closing. (Compl. Exs. 3A–3C.)

---

[2] Biddle and the Firm contend that, as a factual matter, the Radfords were never billed for—and never paid them—for any of this work; instead, the HUD-1 statement from closing reflects that the Tinaglias paid all legal fees associated with the closing. (Mem. Supp. Mot. Dismiss 5 n.2, Dkt. No. 46.) The complaint, however, contains contrary allegations (Compl. ¶ 21 (alleging that the Radfords paid for additional time and work)), and the court is obliged to credit "the well-pleaded, nonclusory factual allegations in the complaint" as true. *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011).

II.  DISCUSSION

A. **Rule 12(b)(6) Standard**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff's allegations must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard "requires the plaintiff to articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, *i.e.*, the 'plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). The plausibility standard requires more than "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

In determining whether the Radfords have met this plausibility standard, the court must accept as true all well-pleaded facts in their complaint and in any documents incorporated into or attached to the complaint. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Further, it must "draw[] all reasonable factual inferences from those facts in [their] favor," *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999), but it need not "accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).

B. **Biddle and the Firm's Motion to Dismiss the Breach of Contract Claim**

As Judge Urbanski explained in his November 10, 2015 Memorandum Opinion:

> Under Virginia law, claims of legal professional liability are governed by the statute of limitations applicable to actions for breach of contract. *Shipman v. Kruck*, 593 S.E.2d 319, 322 (Va. 2004) ("The statue of limitations for legal malpractice actions is the same as those for breach of contract because although legal malpractice actions sound in tort, it is the contract that gives rise to the duty."). Actions for breach of an oral contract must be brought within three years, Va. Code § 8.01-246(4), and actions for breach

5

> of a written contract must be brought within five years, Va. Code
> § 8.01-246(2). The limitations period "begins to run when the
> attorney's services rendered in connection with that particular
> undertaking or transaction have terminated, notwithstanding the
> continuation of a general attorney-client relationship." *MacLellan
> v. Throckmorton*, 367 S.E.2d 720, 722 (1998) (quoting *Keller v.
> Denny*, 352 S.E.2d 327, 330 (1987)).

(Mem. Op. 4, Dkt. No. 41.)

The Radfords contend that a written contract was established through the e-mails exchanged on July 20 between Biddle and Frank Radford and the parties' subsequent course of conduct. They claim that Radford's response "gave Biddle directions regarding his goal to be achieved in the course of the specific representation outlined in writing in Biddle's email, and the scope of his views about terminating the transaction, *if necessary*." (Opp'n Mem. 3 (emphasis in original).) They also emphasize that Biddle thereafter did exactly what his offer had proposed and "engaged in a lengthy advocacy and legal opinion writing with Fidelity, in order to achieve the goal set out in" Biddle's e-mail. (*Id.*)

Biddle and the Firm acknowledge that Biddle's 4:43 p.m. e-mail could be considered a written offer to the Radfords. But they contend that Radford's response, which included that he "did not wish to incur any further expence [sic]," constituted a rejection of that offer under Virginia law. They also contend that the correspondence here did not establish a contract because it did not satisfy the requirement that it "correctly express all of the terms to which the parties agree . . . ." (Mem. Supp. Mot. Dismiss 9 (quoting *Chittum v. Potter*, 219 S.E.2d 859, 863 (Va. 1975)).) That is, in order to establish a contract by correspondence, there must be a meeting of the minds "on every material phase of the alleged agreement." *Chittum*, 219 S.E.2d at 863. And Biddle and the Firm point to the fact that there cannot be a variance between the acceptance and the offer. (Mem. Supp. Mot. Dismiss 10.)

6

Here, it is plain that Frank Radford's response was not an acceptance of Biddle's offer, because "acceptance must be unqualified and no point left open for future consideration or negotiation between the parties." *Lynchburg Hosiery Mills v. Chesterfield Mfg. Co.*, 57 S.E. 606, 607 (Va. 1907); *see also Richeson v. Wilson*, 47 S.E.2d 393, 398 (Va. 1948) ("It is elementary that in order to form a contract, there must be no variance between the acceptance and the offer."). The 10:22 p.m. e-mail did not expressly accept the offer to perform the additional work and instead stated that Frank Radford would be happy to void the sale if the buyer wanted out of the contract. Thus, the two July 20 e-mails quoted above do not constitute an offer and acceptance sufficient to establish a written contract. *See Lynchburg Hosiery Mills*, 57 S.E. at 607; *Richeson*, 47 S.E.2d at 398.

Further—and significantly—the content of the e-mails do not satisfy the high threshold to show a written contract for purposes of applying the five-year statute of limitations. The Supreme Court of Virginia has previously held that, even where a writing might satisfy the statute of frauds, that same writing could fail to constitute a written contract for limitations purposes. *Newport News H. & O.P. Dev. Co. v. Newport News St. Ry. Co.*, 32 S.E. 789 (Va. 1899). In *Newport News,* a resolution of the board of directors signed by its president and secretary satisfied the statute of frauds, but was insufficient to establish a written contract. *Id.* at 790. As the *Newport News* court explained, to satisfy the writing requirement for limitations purposes, the contract "must show on its face a complete and concluded agreement between the parties. Nothing must be left open for future negotiation and agreement: otherwise, it cannot be enforced." *Id*.

Although *Newport News* is an older decision, it remains good law and has been applied by this court in the more recent past. *See Marley Mouldings, Inc. v. Suyat*, 970 F. Supp. 496,

7

498–99 (W.D. Va. 1997) (applying the reasoning of *Newport News* and explaining why it is logical to impose more stringent requirements to establish a written contract for limitations purposes than when determining whether a writing satisfies the statute of frauds); *see also Mulvey Constr., Inc. v. Bituminous Casualty Corp.*, 571 F. App'x 150, 162 (4th Cir. 2014) (relying on *Newport News* to hold that the writings before the court did not represent a written contract and thus, the three-year limitations period for oral contracts applied).

The facts of *Marley Mouldings* are similar to the facts here. In that case, the corporate plaintiff argued that several letters between itself and a law firm established a written contract for legal services. 970 F. Supp. at 499. There, as here, it was clear that legal services had been performed and that the letters referenced those services. But the court noted that the scope of the work was unclear and that there was no agreement as to what the consideration for the services would be, nor an agreement as to the duration of the services. As that court stated, "this court is left with the definite impression that there must be something more to this contract." *Id.* at 499–500.

There are similar deficiencies in the writings relied upon by the Radfords. In his "offer," Biddle suggested two possible courses of action to pursue: (1) negotiations with the title company; and (2) negotiations with the HOA, if the title company could not be persuaded. There is no subsequent writing in which Frank Radford affirmatively agrees to pursue one or the other, or both. There is no subsequent writing where he says he is accepting the offer, even conditionally. Nor is there any subsequent writing in which any limitation on the amount of work is set forth, or in which the full scope of the work is defined. Thus, just as in *Marley Mouldings*, the court believes "that there must be something more to this contract." *Id.* at 499–500.

8

Nor is the court persuaded by the Radfords' argument that Biddle's actions in subsequently undertaking the legal services discussed in his offer show that a written contract exists. The Radfords and Biddle may have eventually reached an agreement of some sort allowing Biddle to perform some legal services, perhaps in person or during a phone conversation. Critically though, a written contract was not established by, or set forth in, any writing that has been produced, and the scope of such work is not clear from any writing or writings presented to the court. The mere fact that work was performed is not sufficient to establish a written contract for limitations purposes. *Laios v. Wasylik*, 564 F. Supp. 2d 538, 543 (E.D. Va. 2008) (concluding there was no written contract for legal services where parties had reached an oral agreement, but there was no writing that showed on its face a complete and concluded agreement); *Marley Mouldings*, 970 F. Supp. at 499–500 (same); *Dunavant v. Bagwell*, No. 15-0870 (Va. Feb. 12, 2016) (unpublished order) (concluding that the trial court properly dismissed a claim for legal malpractice on limitations grounds where there was no written contract, despite the fact that the attorney began and finished the performance). In sum, the Radfords and Biddle may well have entered into a contract, but nothing in the written correspondence constitutes a written contract that satisfies the *Newport News* requirement of a "complete and concluded agreement." 32 S.E. at 790.

For all of these reasons, the court concludes that the exchange of e-mails here does not constitute a written contract enabling the Radfords to rely on the five-year limitations period. Thus, the Radfords' breach of contract claim, the only remaining claim against the third-party defendants, will be dismissed as time-barred.

### III. CONCLUSION

The court will grant the third-party defendants' motion to dismiss for failure to state a claim, will dismiss those defendants from this lawsuit, and will dismiss the amended third-party complaint in its entirety.

An appropriate order will follow.

Entered: June 2, 2016.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge

10
Case 7:15-cv-00018-EKD-RSB   Document 62   Filed 06/02/16   Page 10 of 10   Pageid#: 766